IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**SANTOS L. IRIZARRY-MARTINEZ**,

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 15-2006 (BJM)

**OPINION AND ORDER**

Santos L. Irizarry-Martinez ("Irizarry") seeks review of the Commissioner's determination that he is not disabled or entitled to benefits under the Social Security Act ("Act"), 42 U.S.C. § 423, as amended. Docket No. 1. Irizarry asks for an order to receive disability benefits, or, in the alternative to vacate the decision made by the Commissioner and remand the case for further proceedings. Docket No. 19, "Pltf. Memo." The Commissioner opposed. Docket Nos. 17, 23; "Deft. Memo." This case is before me on consent of the parties. Docket Nos. 6–8. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **AFFIRMED.**

**STANDARD OF REVIEW**

The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec's of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec's of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.

1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec's of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do [his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Sec's of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If

not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the Administrative Law Judge ("ALJ") assesses the claimant's residual functional capacity [1] ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as his age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec's of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz*, 890 F.2d at 524. Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the

---

[1] An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec's of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Irizarry was born on April 4, 1966. (Transcript ("Tr.") 27). He has a high school education, does not speak English, and worked as a mold carpenter and combination welder (both medium-skilled work requiring medium exertion) from 1987 to September 9, 2007. Tr. 26, 27, 61. He claims to have been disabled since September 9, 2007 (alleged onset date) at 41 years of age because he injured his shoulder at work while lifting a heavy weight. Tr. 25, 40, 41. He last met the Social Security Administration's ("SSA") insured status requirements on December 31, 2011 (date last insured). Tr. 18. He did not engage in substantial gainful activity from his September 18, 2007 to December 31, 2011. Tr. 17.

Irizarry applied for disability benefits on March 11, 2011. Docket No. 1. He claimed that he is disabled because his shoulder condition, aside from causing him pain, causes sleep apnea. Tr. 36–38. Additionally, he claims that these conditions, in combination with his older conditions of diabetes and high blood pressure, render him unable to work or prepare food. Tr. 37, 348. He claims that he needs help to sit, get up, and clean himself when using the toilet; that his wife needs to remind him to groom himself and take his medicine, that he can no longer help his wife with house chores; that he has lost interest in leaving his house because of the pain, that he does not go out alone; that he can no longer handle his finances; that he can no longer finish watching television shows or movies due to lack of concentration; and that he cannot lift anything. Tr. 348–351. Additionally, Irizarry states that he cannot walk more than five minutes, sit for more than 15 minutes, kneel,

squat, reach things, follow written or spoken instructions, or hold objects with his hands. Tr. 356-65.

Irizarry's application was denied, both initially and on reconsideration. Tr. 51-54, 243-47. He requested a hearing before an ALJ, which was held September 26, 2013. Tr. 12–33. The ALJ heard testimony from Irizarry, who was represented by counsel, Dr. Ariel Cintron Antommarchi ("Dr. Cintron"), and a vocational expert ("VE"). Tr. 36–50. Irizarry testified that his "pain [was] intense" in his shoulders, back, and waist. Tr. 36-37. Additionally, he testified that he was on medication for the pain, that injections were administered when the "pain was too strong," that he is on medication for diabetes and high blood pressure, that he has trouble sleeping, and that he is seeing a psychiatrist for emotional problems and receiving medication Tr. 37- 38. Finally, Irizarry testified that he is not able to raise his arms above a certain height and that his doctors could not perform surgery on his affected areas because of his high blood pressure. Tr. 41- 42.

The ALJ posed a hypothetical question to the VE:

> [A] young person with a high school and a medium skilled vocational profile who has certain following limitations: He can't do heavy or medium work, he has to do light work. He has to alternate positions between sitting and standing up every 2 hours while he performs his duties. He can't be involved in activities that involve environmental hazards such as height, moving machinery, driving vehicles and, the job must be unskilled, simple and repetitive. Could you indicate the approximate number of jobs existing in Puerto Rico's economy and local economy in the southern area of Puerto Rico under this hypothesis?

The VE responded that, based on the hypothetical, a person could perform three jobs: (1) printed circuit board pre-assembler; (2) sub-assembler–electrical accessories; and (3) electrical accessories assembler. Irizarry's counsel then asked the VE whether the three jobs above could be performed (1) by a person who "has a rupture of [the] supraspinatus

Irizarry-Martinez v. Commissioner of Social Security, Civil No. 15-2006 (BJM)                    6

tendon"; (2) by a person "who required urgent surgery repair since 2007"; (3) by a person who "[is] under the effects of any kind of narcotic that makes them lose their concentration – [i]n combination with – medication [that] is required for . . . pain"; or (4) by a person who "is suffering from sleep apnea and a condition like a pain that won't let [him] rest properly." Tr. 48–49. The VE responded in the negative to all four questions, and testified that these jobs require that a person maintain his arm in the same position for long periods of time. Tr. 48.

In December 2013, the ALJ determined that Irizarry was not disabled, finding at step five that he could perform light "simple repetitive, unskilled work" that exists in significant numbers in the national economy. Tr. 19–28. Irizarry appealed that decision to the Appeals Council. Tr. 8–11. The Appeals Council denied review in June 2015, rendering the ALJ's decision the final agency decision of the Commissioner. Tr. 1–7.

*Evidence of Musculoskeletal Impairment*

The record contains evidence that relates to Irizarry's musculoskeletal impairments. There are notes, medical prescriptions, and MRI results submitted by Dr. Elba Velazquez ("Dr. Velazquez"). Tr. 405–39, 502–11, 532–35, 572–73, 587. In October 2007, Dr. Velazquez interpreted labs, noting that two tendons from Irizarry's right shoulder were ripped. Tr. 127. It was her medical opinion that Irizarry "is not able to work" and "is not able to realize any job." Furthermore, Irizarry reported on different occasions that he had strong back and arm pain. Tr. 103, 107, 115, 117, 120. Around this time, and per Dr. Velazquez's instruction, Irizarry was referred to Dr. Remy Rodriguez Thomas ("Dr. Rodriguez") for MRIs on both shoulders. Tr. 572–73. The tests revealed that Irizarry's left shoulder had no rotator cuff tears but had a degenerative "acromioclavicular joint [change]

with some impingement, a subacromial spur and resulting tendinosis of the supraspinatus." Tr. 570. Irizarry's right shoulder MRI revealed the same results as the left shoulder, in addition to a "small undersurface tear of the rotator cuff insertion with the greater tubercle." Tr. 571.

Irizarry was also referred to Caribe MRI Center to conduct MRIs on his cervical spine and lumbosacral spine. Tr. 574–77. The cervical spine test was reviewed by Dr. Rodriguez and revealed that his cervical spine had an "endplate hypertrophy and apparent thickness calcified posterior spinal longitudinal ligaments at C5-6," moderate "cervical spinal canal stenosis," and disc herniation at "C6-7" and "C4-5." Tr. 584. The lumbosacral spine MRI revealed that there was no indication of "spondylosis," "disc protrusion," "spinal stenosis," or "facet joint degeneration." Tr. 576.

Irizarry was also referred to Dr. George P. Fahed ("Dr. Fahed") for an examination. Tr. 578-80. His opinion was that "pain limitations, ongoing severe OSA and lack of response to medical therapy" will restrain Irizarry from being able to work and gain a meaningful salary. Tr. 579.

Dr. Mayra Vera Ramirez's diagnosis ("Dr. Vera") found that aside from a cervical muscle spasm, Irizarry was alert, oriented in place and time, had full five-out-of-five strength in his upper and lower extremities, had normal gait, had no dysmetria, and had normal forward elevation and abduction movement. Tr. 456–59. Dr. Vera found however, that Irizarry had a cervical muscle spasm and a right shoulder slightly lower than the left. Tr. 457–58. Additionally, Dr. Vera reported that Irizarry had an unspecified shoulder pain and required an orthopedic evaluation. Tr. 459.

Dr. Figueroa Florentino ("Dr. Florentino"), a non-examining consultant, reviewed Irizarry's record and determined he could occasionally lift 20 pounds and frequently lift 10 pounds. Tr. 236. He found that Irizarry could stand, walk, and sit for periods of six hours. Tr. 236. Dr. Florentino also found Irizarry could frequently climb ramps or stairs, balance, and stomp, and occasionally could climb ladders, kneel, crouch, and crawl. Tr. 236.

On two separate occasions when Irizarry was being evaluated by Dr. Perez Roig from the State Insurance Fund Corporation, the nurse's observations state that his pain "increased when sleeping" and that he was oriented about the importance of his medication because he had not taken his hypertension medication that day. Tr. 213–14. Irizarry was also evaluated by Dr. Chacon, who concluded that his right shoulder has impingement and osteoarthritis with no evidence of a rotator cuff tear or bursitis. Tr. 588.

*Other Physical Evidence*

The record also includes evidence regarding an echocardiogram and stress test. Dr. Angie M. Rosado Droz's ("Dr. Rosado") diagnoses on these tests state that Irizarry had no renal or aorta problems, but suffers from mild hypertension. Tr. 95–102. Her medical opinion stated that Irizarry "can't do extreme force" and "is [unable] to do work or physical activities."

*Mental Impairment*

The record contains evidence pertaining to Irizarry's mental impairment. Irizarry received a psychiatric evaluation from APS Clinics of Puerto Rico ("APS") stating that he was sad, depressed, anxious, tired, and angry due to unemployment. Tr. 140. Additionally, he had various follow-up visits at APS and the results were that: (1) he was depressed in some and calm in others; (2) he had adequate sleep in some and inadequate in others; (3)

he always went alone to appointments; (4) he had adequate libido, appetite, judgement, and appearance, and was alert most of the time; and (5) he was never categorized as a suicide or homicide risk. Tr. 311–40, 480–87.

Irizarry was also evaluated by a consulting psychiatrist, Dr. Efren Mangual Cordero ("Dr. Mangual"). Tr. 146–51. Dr. Mangual's diagnosis stated that Irizarry had "moderate major depression," high blood pressure, "diabetes mellitus," and shoulder problems, but that the prognosis of "his mental condition is reserved." Tr. 150. He opined that Irizarry's orientation was good, but that his short term and remote memory was partial, and that his recent memory was poor. Tr. 149. Dr. Mangual determined that Irizarry is able to "assume total responsibility in regards to himself and his financ[es]." Tr. 150.

Dr. Luis Umpierre ("Dr. Umpierre"), a non-examining consultant, reviewed Irizarry's record and determined that he could understand, remember, and carry out simple instructions. Tr. 233. Dr. Umpierre found that Irizarry could maintain concentration for a period of two hours, work near others without distracting them, maintain a routine without special supervision, use judgement to make simple decisions, complete a workday and workweek without interruptions from psychological symptoms, perform his work at a regular pace, and deal with changes in a routine work setting. Tr. 233.

*ALJ's Findings*

The ALJ found at step one that Irizarry had not engaged in substantial gainful activity since September 18, 2007, and at step two, that he suffered from various "severe" impairments, including hypertension, hyperlipidemia, diabetes mellitus, degenerative disc disease in the cervical and lumbar spine, and a major depressive disorder. Tr. 20. On the

other hand, the ALJ found that Irizarry's "sleep apnea" is not a "medically determinable impairment" and gave little weight to Dr. Fahed's diagnosis. Tr. 20.

At step three, the ALJ found that Irizarry's impairment did not meet or equal the severity of one of the listed impairments in the regulations' Appendix 1. Tr. 21-22. The ALJ proceeded to step four, where he determined Irizarry's RFC allowed him to "perform light work as defined by 20 CFR §404.1567(b), with the following limitations: [h]e has to alternate positions between sitting and standing every 2 hours. He is limited to perform[ing] simple, repetitive and unskilled work[, and] he needs to avoid environmental hazards such as driving vehicles, moving machinery and heights." Tr. 22. In light of this RFC assessment, the ALJ determined that Irizarry could not perform his previous occupations. Tr. 26–27.

At step five, the ALJ determined that Irizarry was not disabled, finding that he could perform light work as "Printed Circuit Board Pre-assembler," "Sub-Assembler–Electrical Accessories" or "Electrical Accessories Assembler"— all of which exist in significant numbers within the national economy. Tr. 27-28. The ALJ determined this after considering Irizarry's age, education, work experience, and RFC, as well as the testimony the VE gave in response to a hypothetical question posed by the ALJ. Tr. 27–28.

The ALJ's findings at step one and three are not challenged. However, Irizarry charges that at step two the ALJ erred in not finding that his shoulder condition was a severe impairment. Additionally, Irizarry claims the ALJ made an RFC assessment at Step Four that deviated from, and was unsupported by, the medical opinions in the record, ignored probative evidence relating to his mental and musculoskeletal impairments, and erroneously found Irizarry not credible. He further asserts that these errors infected the

Irizarry-Martinez v. Commissioner of Social Security, Civil No. 15-2006 (BJM)                          11

hypothetical question posed to the VE at step five. The Commissioner maintains that the ALJ's decision was supported by substantial evidence, and that Irizarry's complaint should be dismissed with costs for judgement under 42 U.S.C. § 405(g). Docket No. 23.

## DISCUSSION

**I.    Shoulder condition impairment at step two**

Irizarry first argues that the ALJ erred and violated SSR 96-3p by not conducting the required "assessment of the functionally limiting effects of [the] impairment(s) on [his] ability to do basic work activities." SSR 96-3p, 1996 WL 374181 at*1 (July 2, 1996) However, the ALJ found that Irizarry had a medical impairment in his shoulder that would limit his ability to perform basic work functions. Tr. 24-26. The court must determine whether there is substantial evidence to support the ALJ's determination at step two in the sequential evaluation process.

Here, although the ALJ did not discuss this impairment in step two, he considered it in his determination of Irizarry's RFC. Therefore, the ALJ consistently followed 20 C.F.R. § 404.1545, which states that if a person has more than one impairment, the ALJ is required to consider all the medically determinable impairments including the ones that are not "severe" in order to determine that person's RFC. *Id.* Thus, any error the ALJ committed by overlooking Irizarry's shoulder condition in step two was harmless and does not constitute a reversible error. *See Carpenter v. Astrue*, 537 F.3d 1264,1266 (10th Cir. 2008) (errors committed by the ALJ during the severity analysis became harmless when he found no basis for the application at step two and continued to the next step of the evaluation); *Coe v. Colvin*, No. CV 15-30037-MGM, 2016 WL 3350995, at *5 (D. Mass. June 15, 2016) (errors committed in step two are harmless when the ALJ considers the

impairment through the required evaluation process to determine the RFC); *Perez v. Astrue*, 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) (if the ALJ considers all the severe and non-severe symptoms when assessing the plaintiff's RFC, then any error committed in step two was harmless).

## II.　　Residual Functional Capacity

Irizarry next contends that in determining his RFC, the ALJ erroneously substituted his own opinion for the medical opinions in the record concerning his mental and musculoskeletal impairments. An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. § 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* And ordinarily, an "ALJ, as a lay person is not qualified to interpret raw data in a medical record." *Manso-Pizarro*, 76 F.3d at 17. So when "a claimant has sufficiently put [his] functional inability to perform [his] prior work in issue, the ALJ must measure the claimant's capabilities and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" *Id.* (quoting *Santiago*, 944 F.2d at 7).

Social Security regulations require the ALJ to express a claimant's impairment in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec's of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). "The ALJ [is] entitled to credit the vocational expert's

testimony as long as there [is] substantial evidence in the record to support the description of [the] impairments given in the ALJ's hypothetical to the vocational expert." *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 429 (1st Cir. 1991). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). Additionally, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the ultimate determination about disability. 20 C.F.R. § 404.1527(e)(2)(1).

The ALJ was entitled to rely on the jobs identified by the VE only if the limitations in the hypothetical question accurately depicted Irizarry's actual work-related limitations. *Arocho*, 670 F.2d at 375. When determining which work-related limitations to include in the hypothetical questions, the ALJ must: (1) weigh the credibility of a claimant's subjective complaints, and (2) determine what weight to assign the medical opinions and assessments of record. *See* 20 C.F.R. §§ 404.1527 (medical assessments must be supported by the medical record and evidence as a whole), 404.1529 (subjective complaints must be supported by the medical evidence and record as a whole.)

### A.     *Mental Impairment*

Irizarry claims that the ALJ erred in failing to factor his mental limitations into the RFC assessment. Docket No. 19. The ALJ determined in the RFC that Irizarry "had depression but remained alert, oriented[,] logical, calm, [and] well-groomed and with adequate judgement, affect, insight and normal thought process." Tr. 26. The ALJ's determination was very similar to both APS and Dr. Mangual opinions, which shows that he relied on their reports when making his RFC determination. The ALJ pointed out that

Irizarry began his ambulatory treatment at APS several months after the application date. Tr. 486. He also gives great weight to Dr. Mangual's opinion "because it is consistent with the diagnosis and clinical findings by APS." Tr. 25. The ALJ's overall conclusion was that Irizarry's major depressive disorder stated by both psychiatric evaluations could medically cause his alleged symptoms but not the "intensity, persistence and limiting effect" that he argues. Tr. 25.

A claimant seeking disability benefits based upon mental illness must establish that it impedes him from performing the basic mental demands of competitive remunerative unskilled work on a sustained basis, that is: (1) understand, carry out, and remember simple instructions; (2) respond appropriately to supervision, coworker, and usual work situations; and (3) deal with changes in a routine work setting. *Ortiz*, 890 F.2d at 526 (quoting SSR 85-15). For a claimant to understand, carry out, and remember simple instructions in any job, he must have the mental ability to remember very short and simple instructions, and the "ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." SSA's Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a). Simple duties are those that can be done with little or no judgment and that can be learned on the job in a short period of time. 20 C.F.R. 404.1568(a).

The record contains substantial medical and self-reported evidence to support the ALJ's RFC finding that Irizarry's alleged mental impairments are not as intense or limitative as he presents them. First, as noted above, both APS and Dr. Mangual opined in their evaluations that Irizarry is alert and logical. Additionally, Dr. Mangual opined that

Irizarry had good orientation, concentration, and immediate memory, and has the ability to "assume total responsibility in regards to himself and his financial funds." Tr. 150.

Irizarry argues that the ALJ erred in failing to assess his mental impairment in the RFC by making reference to specific areas where Dr. Umpierre, as a non-examining consultant for the DDS, reports that Irizarry had some areas where he had moderate limitations, such as his ability to remember locations and work-like procedures. Tr. 237 But, in this same report, Dr. Umpierre states that Irizarry: (1) has no significant limitation in understanding and remembering very short and simple instruction; (2) has the ability to "maintain concentration and attention for approximately two hour segments"; (3) has the ability to "work in proximity to others without distracting them"; and (4) "has the ability to complete a workday without psychological symptoms and perform at a regular pace." Tr. 233, 239.

The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). "[A] treating source's opinion on the nature or severity of impairments is given controlling weight if well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record." *McNelley v. Colvin*, No. 15-1871, 2016 WL 2941714, at *1 (1st Cir. Apr. 28, 2016) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ's finding reveals that he made the determination as to one of Irizarry's functional capacities by using APS's, Dr. Mangual's, and Dr. Umpierre's medical opinions in his RFC determination.  He reviewed the relatively good mental aspects that Irizarry's evaluations presented, such as his awareness, his ability to perform simple jobs, and his ability to work without psychological symptoms affecting his performance. Tr. 233. Based on these

Irizarry-Martinez v. Commissioner of Social Security, Civil No. 15-2006 (BJM)                                16

medical opinions, the ALJ was able to determine that Irizarry had the capacity to perform simple, unskilled work, and that these were consistent with the applicable Social Security regulation. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996) (capacity to perform unskilled work involves "seeing, manipulating[,] understanding and remembering simple instructions").

### B.     *Musculoskeletal Impairment*

Irizarry next contends that the ALJ failed to consider his upper-extremities limitations in the RFC assessment and the hypothetical posed to the VE. In 2012 and 2013, Dr. Velazquez ordered Irizarry to undergo an MRI for both shoulders. Tr. 571–72. At this time, he complained of "bilateral shoulder pain." Tr. 25. Irizarry had various diagnostic tests and MRIs done, which revealed that he had impingement and osteoarthritis in his right shoulder, but no rotator cuff tear or bursitis. Tr. 588. The results also revealed that Irizarry had pain when moving both shoulders. Tr. 588 Additionally, Dr. Vera reported that Irizarry's motor inspection was normal, with a five-out-of-five strength in his upper extremities, normal forward elevation, normal hand function, and normal gait with the exception that the right shoulder was lower than the left. Tr. 458–61. Finally, Dr. Florentino found that Irizarry could occasionally lift 20 pounds, frequently lift 10 pounds; that he could frequently climb stairs, balance, and stomp; and that he could occasionally climb ladders, kneel, crouch, and crawl. Tr. 236.

The ALJ ultimately found that the record did not justify Dr. Velazquez's opinion that Irizarry was "unable to work" and that he could not "realize any job," finding that this opinion was conclusory because Dr. Velazquez was only involved with the primary

maintenance of Irizarry's health and because she did not support her opinion with "clinical findings or abnormalities" that would impede Irizarry from performing a job. Tr.25.

Importantly, the ALJ does not interpret the results of Irizarry's diagnostic tests and MRIs on his own. *Cf. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985) (ALJ substituted his own judgment for that of a physician by independently reviewing and interpreting the laboratory reports). Rather, the ALJ took the results of the diagnostic tests, the MRIs, and Dr. Vera's and Dr. Florentino's opinions into consideration when determining the RFC. He recognized that Irizarry had pain when moving his shoulders as the reports suggest but learned from the reports that Irizarry did not have any injury that lessened the strength in his upper extremities, and had normal movement in his hands. Tr. 458–61. His RFC determination was more restrictive than Dr. Florentino's opinion, which suggests that the ALJ concluded that Irizarry was less capable of preforming certain activities and jobs. Tr. 22. For this reason, the ALJ included certain limitations in the RFC, but did not place as much importance as Irizarry wanted. Thus, the ALJ's RFC determination and Florentino's medical opinion are consistent with the SSR 96-9p requirements. *See* SSR 96-9p SSR 96-9p, 1996 WL 374185 (July 2, 1996) (one of the capabilities required in unskilled work is to lift a maximum of 10 lb.). In short, the ALJ was able to give the VE an inquiry that accurately reflected Irizarry's functional work capacity. *Arocho*, 670 F.2d at 375.

### C. *Irizarry's credibility*

Irizarry claims that the ALJ erred in evaluating his credibility. When credibility issues arise, the ALJ is "free to resolve [these] issues as to lay testimony." *Balsamo*, 142 F. 3d at 81. The court will defer to the ALJ's "evaluation of the claimant's credibility, provided

that such determination is supported by good reason and substantial evidence." Smith v. Colvin, 756 F. 3d 621, 625 (8th Cir. 2014).

In the present case, Irizarry argues that the ALJ erred in determining his credibility on three specific instances: (1) that he gave an inconsistent statement regarding his driving ability; (2) that he reported income in 2009, when he allegedly was disabled; and (3) that he gave an inconsistent statement regarding his medications. Pltf. Memo. 9–12. The ALJ questions Irizarry's credibility regarding these three instances by arguing: (1) that he stated in the administrative hearing he "went to work alone" and "on his own" in 2009; (2) that he first told his consulting psychiatrist his medications "[did] not help" and afterward that these did; and (3) that he alleged he could not drive but admitted to his consulting psychiatrist that he actually does. Tr. 22–24, 43, 338.

The ALJ did not err regarding Irizarry's driving ability because he supported his determination by citing the two occasions in the report where Irizarry first states that he cannot drive but then admitted to his consulting psychiatrist that he does. *See Partee v. Astrue*, 638 F. 3d 860, 865 (8th Cir. 2011) (an ALJ can discredit a claimant's credibility when his determination is based on inconsistencies found in the evidence). Therefore, the record supports the ALJ's determination of Irizarry's inconsistent statements about his driving ability.

On the other hand, the ALJ erred in the last two instances because he misinterpreted the meaning of plaintiff's statements in the administrative hearing about going to work alone. Additionally, the ALJ erred in his interpretation that Irizarry's allegations of side effects and pain meant that the medication was not working. Although, the ALJ misinterpreted Irizarry's statements, his errors in these instances are harmless. "[A]n ALJ's

error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir.2012) (citations omitted).

In sum, the ALJ's findings towards Irizarry's RFC are not inconsistent with all the medical reports in the record. As a result, Irizarry suffered no prejudice from the ALJ's errors and remanding this case for further elaboration would serve no additional purpose. *See Rodríguez-Valentin v. Astrue*, No. CIV. 10-2234 BJM, 2012 WL 2525600 (D.P.R. June 29, 2012) (The ALJ's error was harmless because his RFC determination was consistent with claimant's past work statements and the VE's description of claimant's vocational profile).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January, 2017.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge